UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE


FREES, INC.,                               )
                                           )
                Plaintiff,                 )
                                           )
v.                                         )          No. 3:06-CV-307
                                           )          (Jordan/Shirley)
PHIL MCMILLIAN,                            )
                                           )
                Defendant.                 )


## MEMORANDUM AND ORDER

This matter is before the undersigned pursuant to 28 U.S.C. § 636(b), the Rules of

this Court, and by Order [Doc. 8] of the Honorable Leon Jordan, United States District Judge, for

disposition of the Motion to Quash [Doc. 1] filed by Southeast Business Solutions, Inc.

("Southeast"). The undersigned held a hearing on this motion on August 10, 2006. Participating

on behalf of the plaintiff Frees, Inc. ("Frees") was attorney Stephen Doody. Participating on behalf

of the defendant Phil McMillian was attorney Alan Stroud. Participating on behalf of the non-party

Southeast was attorney Brent Watson. Subsequent thereto, Southeast filed a Motion for the Court

to Reconsider Its Decision Regarding the Motion to Quash [Doc. 11], and Frees responded [Doc.

12]. For the following reasons, and to the extent stated herein, Southeast's Motion to Quash [Doc.

1] is **GRANTED IN PART**, but only to the extent stated herein, and Southeast's Motion for the

Court to Reconsider Its Decision Regarding the Motion to Quash [Doc. 11] is **DENIED**.

## I. Factual Background

Plaintiff Frees is a Louisiana corporation that designs and constructs ventilation and dust control systems for manufacturing facilities where fiberglass-reinforced products, such as fiberglass boats, are made. Defendant McMillian was formerly a vice-president of Frees. In connection with his employment, McMillian was provided a laptop computer which contained business data and technological data, which Frees claims constitutes proprietary information. Upon McMillian's resignation, the laptop was repossessed by Frees, and it is alleged that much of Frees' proprietary information was missing from the laptop.

Immediately following his departure from Frees, McMillian went to work for Southeast. Southeast had just then recently hired another ex-employee of Frees, Tony Pierceall. Frees alleges that immediately after hiring McMillian and Pierceall, Southeast commenced the sale and manufacture of fiberglass ventilation and dust control systems virtually identical to those of Frees, filling orders for the same systems and the same manufacturing plants which McMillian had solicited for Frees only weeks before. Frees alleges that the autocad drawings, specifications, pricing, and other information pertinent to those systems and plants were among the data files missing from the laptop.

Frees subsequently filed suit in state court in Louisiana, naming McMillian, Southeast, and Pierceall as defendants. Frees also initiated the underlying action in the United States District Court for the Western District of Louisiana, alleging a violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030. The federal court action names only McMillian as a defendant. Southeast states that the state court litigation remains in the earliest stages, as Southeast has moved

to dismiss for lack of personal jurisdiction.  Discovery against Southeast in that case is currently

limited to jurisdictional issues only.

## II.     <u>Analysis</u>

Southeast moves to quash a subpoena issued to Southeast by Frees in connection with

the underlying federal litigation.  Southeast objects to the subpoena as containing requests that are

overbroad, unduly burdensome, immaterial, and unreasonable under the circumstances. [Doc. 1].

Frees opposes Southeast's motion, arguing that the subpoenaed is appropriately tailored and seeks

information relevant to the underlying litigation. [Doc. 7].

The subpoena at issues seeks the following information:

1.      Any documents of any and every nature (whether stored in paper format, electronically or in any other form, hereinafter "Documents"), that in any way pertain to, reflect, include, refer to or arise from either of the following:

(a)      Any work performed or services rendered by Phil McMillian ("McMillian") and/or Lawrence "Tony" Pierceall ("Pierceall") for, through or on behalf of Southeast Building Solutions, Inc., its subsidiaries, divisions or affiliated businesses (hereinafter "Southeast"); or

(b)      Any information provided by McMillian and/or Pierceall to or for the benefit of Southeast,

in connection with ventilation for fiberglass fabricators (hereinafter "Fiberglass Ventiliation") services, equipment and/or systems, including without limitation the following: designs, design criteria, design parameters, calculations, formulas, data, work sheets, drawings, schedules, spread sheets, plans, specifications, plant layouts, survey materials, computer programs, software, computer or data entries, engineering analysis, reports, cost estimates and price quotations.

2.      All Documents which indicate, refer or relate to any agreement between Southeast and McMillian and/or Pierceall.

3.      All Documents which indicate, refer or relate to any communications to or from Southeast and (a) McMillian and/or (b) Pierceall before the respective dates on which they became employed by Southeast, including without limitation all telephone bills and correspondence (whether by e-mail, U.S. mail or other means of transmission).

4.      All Documents sent or received by Southeast, to or from any person or entity, which in any way refers or relates to Frees, Inc., its good or services and/or the subject matter of the captioned civil action or any civil action involving Frees, Inc.

5.      All Documents which in any way pertain to, reflect, include, refer to or arise from any Fiberglass Ventilation services, equipment and/or systems offered or sold by Southeast (a) before, and (b) after Southeast employed McMillian and/or Pierceall, including without limitation the following: designs, design criteria, design parameters, calculations, formulas, data, work sheets, drawings, schedules, spread sheets, plans, specifications, plant layouts, survey materials, computer programs[,] software, computer or data entries, engineering analysis, reports, cost estimates and price quotations and profit(s).

6.      All computers (whether laptop, desk top or other), computer servers and all other devices capable of storing electronic data (including without limitation any personal data assistant, organizer, electronic calendar, word processor and Blackberry) used by Southeast and/or its personnel, including any and all codes or passwords necessary to access same and examine the contents of same.  Any computers too large or burdensome to produce at said law offices will be examined at Southeast's location at 104 Meco Lane, Oak Ridge, Tennessee 37830.

Rule 45 of the Federal Rules of Civil Procedure provides that the Court shall quash or modify a subpoena if it subjects a person to "undue burden."  Fed. R. Civ. P. 45(c)(3)(A). Furthermore, if the subpoena requires disclosure of a trade secret or other confidential research, development, or commercial information, the Court may

quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

Fed. R. Civ. P. 45(c)(3)(B).

At the August 10, 2006 hearing, the Court reviewed the subpoena at issue and found the scope of the discovery sought to be overbroad and unduly burdensome at this time. Furthermore, the Court found that the subpoena appears to seek disclosure of confidential commercial information. In order to limit the scope of the plaintiff's request, and in the interest of protecting Southeast's confidential information, the Court found that the discovery sought by the plaintiff should be accomplished in stages, or what the Court commonly calls "tiered discovery." In the "first tier," the Court found that it would be appropriate for the plaintiff to identify at least one project involving files that were allegedly removed from the laptop. Once a particular project was identified, Southeast would search for documents and/or files of the type described that were related to that project and produce them. If any of the produced documents and/or files could be shown to be relevant to the issues in the case or reasonably calculated to lead to the discovery of admissible evidence, then the parties would then proceed to the "second tier" of discovery, where Frees could then request documents related to other projects. If no responsive documents could be found with respect to the first identified projects, however, Frees would be required to make a sufficient showing to the Court as to why discovery should proceed further.

The Court found that the plaintiff had made the predicate showing necessary to allow the first tier of discovery to progress. Thereafter, in a telephone conference, Frees identified Monterey Boats in Williston, Florida, and Southport Boats in Leland, North Carolina, as the first

two projects for which it seeks discovery. Frees represented that these projects were for new buildings with ventilation for the following processes: laminate, gel coat, and dust control for grinding. Accordingly, per the tiered discovery process outlined above, the Court ordered Southeast to produce all documents and computer files related to these projects, including designs, design criteria, design parameters, calculations, formulas, data, work sheets, drawings, schedules, spread sheets, plans, specifications, plant layouts, survey materials, computer programs, software, computer or data entries, engineering analysis, or reports. In order to protect against the disclosure of any proprietary information, Southeast was not required to produce at this time any financial records related to the Monterey Boats project or the Southport Boats project, including any cost estimates, billings, or price quotations. Nor was Southeast required to produce the names of any of its suppliers at this time.

Following these oral rulings, Southeast filed a motion [Doc. 11], requesting the Court to reconsider its decision, alleging in part that Frees never had any information on its computers relating to the Monterey Boats or Southport Boats projects prior to McMillian leaving the employment of Frees. Southeast further represents that "[t]he affidavit of Phil McMillian states that during the time that he was employed by Frees, he had no knowledge regarding the job described by Mr. Doody at Monterey Boats and that he never had any knowledge regarding the job at Southport Boats." [Doc. 11]. However, Frees filed a response to the motion [Doc. 12], and attached two exhibits, which appear to be correspondence from Phil McMillian, in his capacity as Vice President of Frees, to Monterey Boats in Williston, Florida. The first letter [Doc. 12 Ex. A] is in reference to "Frees Job #23028"; the second letter [Doc. 12 Ex. B] appears to be in reference to the same or different job. The Court finds that these exhibits raise serious questions regarding the

representations of Southeast and Mr. McMillian with respect to Mr. McMillian's knowledge of the Monterey Boats project.  Accordingly, the Court finds that Southeast has not articulated a sufficient basis for the Court to reconsider its decision.  Southeast shall produce the information and documents heretofore ordered, and as set forth herein, by the end of business on **September 25, 2006**.

**IT IS SO ORDERED.**

**ENTER:**

　　　　s/ C. Clifford Shirley, Jr.　
United States Magistrate Judge